# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

           **Plaintiff,**

    v.                                            Case No. 10-CR-156

**KURTIS EDWARD ARMANN,**

           **Defendant.**

## RECOMMENDATION AND ORDERS ON THE
## DEFENDANT'S PRETRIAL MOTIONS

### I. PROCEDURAL HISTORY

On August 24, 2010, the grand jury in this district returned a three count indictment against Kurtis Edward Armann ("Armann"). (Docket No. 1.) Armann made his initial appearance before this court on November 16, 2010 and was arraigned on the pending indictment. At this hearing, the court also discussed Armann's pending request to represent himself in this matter. After an extensive colloquy, including discussion of Armann's background and prior experience in self-representation, the court concluded that Armann understood the risks of self-representation and voluntarily, knowingly and intelligently waived his right to counsel. The court granted the motion to permit appointed counsel to withdraw and then appointed standby counsel to assist Armann in representing himself. (Docket No. 28.)

On December 1, 2010, Armann filed a motion to dismiss wherein he alleged the existence of a far-reaching government conspiracy that resulted in Armann being subjected to what he described as a large amount of investigational drugs and having a "chemical weapon" implanted in his thigh.

Armann contends that his efforts to expose this conspiracy have led to him being fearful for his life. (Docket No. 34.) Armann requested an evidentiary hearing on this motion. (Docket No. 35.) Armann also filed a motion for discovery, (Docket No. 42), and a motion for notice of the government's intent to use evidence under Federal Rule of Evidence 403(b). (Docket No. 43.)

Based largely on the defendant's motion to dismiss, the government expressed its concern for the defendant's competence to proceed and filed a motion to determine defendant's mental competency, stating that, "there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241; (Docket No. 46.)  The court scheduled a hearing on the government's motion to discuss this matter with the government and Armann.

The day before the hearing, Armann filed an objection to the government's request, (Docket No. 48), and at the hearing, Armann stated his view that he believed a competency evaluation was unnecessary. However, Armann stated that if a hearing was ordered, he would cooperate fully and requested that a local professional be utilized as opposed to transporting him to a Bureau of Prisons facility for an examination.

Prior to the hearing, in addition to reviewing the record of the present proceedings, the court also reviewed public records associated with Armann's prior legal proceedings, see, e.g., Armann v. McKean, 549 F.3d 279 (3d Cir. 2008); Armann v. Dep't of the Army, 2005 U.S. Dist. LEXIS 18870 (D.D.C. Aug. 30, 2005), and noted that in these proceedings, the question of mental competence frequently arose.

Based upon all the information presented, for the reasons more fully stated on the record, the court found that there was "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he

is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241. (Docket No. 51.) The court further noted that because Armann is representing himself in this matter, a court's concerns with respect to competence must be analyzed in that context. As the Supreme Court stated, "[o]ne might not be insane in the sense of being incapable of standing trial and yet lack the capacity to stand trial without benefit of counsel." Indiana v. Edwards, 554 U.S. 164, 173 (2008) (quoting Massey v. Moore, 348 U.S. 105, 108 (1954)). (Docket No. 51.)

Therefore, the court appointed an expert to examine Armann and explicitly requested the expert to opine not only as to Armann's competence to proceed but also to represent himself in this matter. (Docket No. 51.) Following her examination of Armann, the expert submitted her report (Docket No. 52), and a hearing was held before this court where the court-appointed expert testified, (Docket No. 61). At the request of the parties, the court accepted post-hearing briefs. (Docket Nos. 64, 67.)

On March 23, 2011, this court entered an order concluding that Armann was competent to proceed and to continue to represent himself in this matter. (Docket No. 68.) Because briefing on the defendant's pending motions had been interrupted by the competency proceedings, the court set a schedule for the parties to submit further briefs. The government submitted an additional response, (Docket No. 69), and Armann has asked the court to resolve the motions based upon the present record, (Docket No. 70). Therefore, the pleadings on the defendant's motions are closed and the matters are ready for resolution. This matter has been assigned to Chief Judge Charles N. Clevert, Jr. who has yet to schedule a trial date in this matter.

**II. MOTION TO DISMISS**

Although it could be the prospectus for a new action-thriller, the following tale comes from the defendant's motion to dismiss and the records of prior proceedings.

3

In 1996, Armann was a soldier in the United States Army when unbeknownst to him, the military began subjecting him "large volume of investigational drugs, as well as other procedures calculated to disrupt profoundly the senses and personality." (Docket No. 34 at 8.)

In a prior civil action, Armann alleged that his participation in this investigational program began in 1995 when he was approached by a woman who identified herself as a member of the Central Intelligence Agency and who asked Armann to participate in a classified program studying the effects of human growth hormone. Armann v. Dep't of the Army, 2005 U.S. Dist. LEXIS 18870 (D.D.C. Aug. 30, 2005). The program involved implanting a "small time release rod" in his right arm. Id. In his present motion, Armann states that the military implanted a "chemical weapon" in his thigh. (Docket No. 34 at 8.)

Following the commencement of this study, Armann began to experience certain medical problems such as acne, migraines, and photosensitivity, for which he was prescribed various medications Armann, 2005 U.S. Dist. LEXIS 18870, 3-4.

In February of 1998, a fellow soldier asked Armann to kill the father of her oldest child because she believed the father was attempting to gain custody. United States v. Gibson, 58 M.J. 1 (C.A.A.F. 2003). Armann and this fellow soldier entered into a contract whereby she would pay a $5,000 non-refundable deposit to Armann and if she tried to cancel the contract, Armann would be authorized to kill her. Id. at 2-3. When the woman learned that the father of her child was not seeking custody, she attempted to cancel the contract and refused to pay the $5,000 deposit. Id. at 2. "Armann began to talk with his group of marijuana-smoking friends about various schemes to kill" the woman including "poisoning [her], injecting her with a heart-stopping drug, smashing her head against the dashboard of her car, building a car bomb, knocking her car off the road with a four or five-barreled 'blast gun,' luring her onto a highway rest stop and shooting her, and shooting her while she walked her dog." Id. at 3.

4

In his prior civil suit, Armann alleged that he was instructed by his contact at the CIA to utilize the contract provision to kill his colleague because she knew about the classified project involving investigational drugs. Armann, 2005 U.S. Dist. LEXIS 18870, 4.

On the night of October 10, 1998, Armann, clad in black, waited near the gate his reneging fellow soldier was assigned to guard. Armann v. McKean, 549 F.3d 279, 281 (3d Cir. 2008). Peering through the scope of a rifle a friend had fabricated in the unit's machine shop, Armann took aim at her head and fired. Id.; see also Gibson, 58 M.J. at 2. The bullet struck her in the neck, but because the bullet was deflected by the collar of her Kevlar vest, the bullet penetrated less than an inch and she survived. Gibson, 58 M.J. at 2.

Armann subsequently pled guilty in a general court martial and was incarcerated. (Docket No.34 at 7); see also Gibson, 58 M.J. 1; McKean, 549 F.3d at 281. While incarcerated from 1998 through 2002, Armann was "maintained in a near vegetative state through the administration of powerful tranquilizers and narcotics." (Docket No. 34 at 5.)

In May of 2003, an anonymous source provided Armann's father with details of what his son had been subjected to, which he then provided to the FBI, including "overwhelming evidence of violations of federal, military and international law." (Docket No. 34 at 8-9.) However, the FBI declined to investigate, stating that it could not interfere in a military matter. (Docket No. 34 at 9.) Armann's father turned to another FBI field office and the office of a United States Senator, both of which likewise declined to become involved in a military matter. (Docket No. 34 at 9.)

Around the same time Armann's father was attempting to spur an investigation, a prison physician examined Armann and detected a bump on Armann's right thigh in the precise location Armann had alleged that a chemical weapon had been implanted. (Docket No. 34 at 9.) X-rays revealed a hard cylindrical object embedded in Armann's thigh. (Docket No. 34 at 9-10.) There was a scar on Armann's leg about five inches above the object which appeared to be from a gunshot

wound about five or six years ago. (Docket No. 34 at 9-10.) However, Armann's military file bore no record of such an injury. (Docket No. 34 at 9-10.)

The "chemical weapon," measuring approximately 1.25 inches in length and 0.25 inches in diameter and constructed of plastic, titanium, and stainless steel, was removed from Armann's thigh in July of 2003. (Docket No. 34 at 10.) The item was investigated and disassembled to reveal that it consisted of several parts. (Docket No. 34 at 10.) Despite Armann's requests to have the object analyzed by independent experts, the military destroyed the object. (Docket No. 34 at 11.) Armann did, however, obtain photographs of this object, which he provided to the court, in paper format only, as Attachment B to Docket No. 35.

In November of 2003, Armann filed a civil suit in the U.S. District Court for the District of Columbia, see Armann v. Dep't of the Army, 2005 U.S. Dist. LEXIS 18870 (D.D.C. Aug. 30, 2005), and shortly thereafter, all his personal belongings and legal materials were removed from his cell and he was transferred to the custody of the Bureau of Prisons. (Docket No. 34 at 12.) In April of 2004, Armann filed a petition for a writ of habeas corpus in the Western District of Pennsylvania. (Docket No. 34 at 13; see also Armann v. FCI-McKean, 2006 U.S. Dist. LEXIS 72979 (W.D. Pa. Oct. 6, 2006); Armann v. Warden, 2007 U.S. Dist. LEXIS 39660 (W.D. Pa. May 31, 2007); Armann v. McKean, 549 F.3d 279 (3d Cir. 2008).)

In May of 2004, Armann received a phone call from a person who promised him that he would be released on parole once he served ten years if he dropped his civil suit. (Docket No. 34 at 13.) Armann states he dismissed his suit, and three weeks later he was formally notified that he would be granted parole after serving the statutory minimum of 120 months in prison. (Docket No. 34 at 13.) However, the court notes that court records indicate that Armann's civil suit was dismissed on August 30, 2005 when the court granted the defendant's motion to dismiss. Armann v. Dep't of the Army, 2005 U.S. Dist. LEXIS 18870 (D.D.C. Aug. 30, 2005). Armann appealed but the

court of appeals dismissed his appeal on July 7, 2006 when he failed to pay the filing fee or move to proceed in forma pauperis. Armann v. Dep't of the Army, 2006 U.S. App. LEXIS 17282 (D.C. Cir. July 7, 2006).

Armann continued with his efforts to bring to light the "torture" and investigational drugs he was subjected to, as well as other related matters. (Docket No. 34 at 13-16.) After being released on parole in 2008, Armann continued to devote attention to this matter, including collecting "a large amount of documentary evidence" which he began posting on Myspace.com. (Docket No. 34 at 17-18.) Armann's Myspace postings began to attract attention, leading to military personnel and civilians providing Armann with additional similar information. (Docket No. 34 at 18-19.) In mid-December of 2008, Armann, and another individual with whom he was working on this project, began receiving numerous death threats by way of email, threatening to kill them if they did not cease their efforts to publicize these matters. (Docket No. 34 at 19, 22.)

Shortly after one round of threats, FBI agents seized computers from Armman's associate's home and interrogated the associate as to Armann's whereabouts. (Docket No. 34 at 22.) The associated notified Armann and stated that he feared for his own safety as well as that of Armann. (Docket No. 34 at 23.) Thus fearing for his life, Armann fled, breaking the terms of his parole and becoming a fugitive. (Docket No. 34 at 23.) In October of 2009, Armann's associate was confronted by some of the individuals who had previously raided his home and was physically assaulted by these individuals, resulting in the hospitalization of the associate. (Docket No. 34 at 23.) Following his release from the hospital, the associate again contacted Armann and informed him of these events. (Docket No. 34 at 23.) Two days later, the associate was found dead from an apparent drug overdose; Armann believes that he was murdered to prevent further dissemination of the information in Armann's possession. (Docket No. 34 at 23.)

Armann contends that the actions he allegedly took and for which he was indicted, were done out of necessity, and therefore dismissal of the indictment is appropriate. (Docket No. 34 at 24.) Moreover, he seeks dismissal of the indictment based upon the "unconscionable conduct" of numerous government actors. (Docket No. 34 at 24.) The defendant requests two evidentiary hearings to resolve his motion, the first of which to resolve a question of "jurisdiction" and the second to permit Armann to present evidence to support the allegations contained in his motion.

Armann is charged with possessing "document-making implements, with the intent that such implements would be used in the production of false identification documents," in violation of Title 18, United States Code, Sections 1028(a)(5), 1028(b)(1)(C) and 1028(c)(3)(A), (Count 1), possessing and transferring five or more false identification documents, Title 18, United States Code, Sections 1028(a)(3), 1028(b)(2)(B), and 1028(c)(3)(A), (Count 2), and possessing the identification of others in relation to a felony, in violation of Title 18, United States Code, Sections 1028A(a)(1) and 1028A(c)(4), (Count 3). (Docket No. 1.)

Armann's argument, as this court understands it, is essentially a hybrid of a motion to dismiss due to outrageous government conduct and a motion to dismiss because his conduct was permitted under the defense of necessity. Armann contends that his history of being subjected to government experiments and the fear for his life that arose as a result of his efforts to bring this conduct to light, made it necessary for him commit the crimes he is charged with regarding possessing and creation of false identity documents.

The Seventh Circuit has explicitly rejected the argument that even outrageous conduct by the part of the government warrants dismissing the charges against a defendant. United States v. Lopeztegui, 230 F.3d 1000, 1003 (7th Cir. 2000); United States v. Garcia, 89 F.3d 362, 367 (7th Cir. 1996); United States v. Boyd, 55 F.3d 239, 241 (7th Cir. 1995). If government actors violated the law, the appropriate remedy is found in legal action, whether civil or criminal, against the

government actors and not in dismissal of the charges against a defendant. See Hampton v. United States, 425 U.S. 484, 490 (1976); see also United States v. Kizeart, 2011 U.S. Dist. LEXIS 36535 (S.D. Ill. Apr. 4, 2011).

However, certain forms of government conduct might form the basis for a defense to the charges such as entrapment, see Hampton, 425 U.S. at 490, or, as Armann argues is applicable in his case, the scarcely utilized and narrow affirmative defense of necessity or the similar defense of duress.

> The defense of necessity is available when: (1) the defendant reasonably believes that his criminal conduct was necessary to avoid harm more serious than that sought to be prevented by the statute defining the offense, and (2) given the imminence of the threat, there are no reasonable legal alternatives to violating the law. United States v. Bailey, 444 U.S. 394, 409-11 (1980); United States v. Quilty, 741 F.2d 1031, 1033 (7th Cir. 1984) (per curiam).

United States v. Schulte, 7 F.3d 698, 700 (7th Cir. 1993); see also United States v. Tokash, 282 F.3d 962, 969 (7th Cir. 2002) (citing United States v. Jocic, 207 F.3d 889, 892 (7th Cir. 2000); United States v. Salgado-Ocampo, 159 F.3d 322, 326 (7th Cir. 1998); United States v. Haynes, 143 F.3d 1089, 1090 (7th Cir. 1998); United States v. Elder, 16 F.3d 733, 738 (7th Cir. 1994)).

> Like self-defense or duress, necessity is an affirmative defense "designed to spare a person from punishment if he acted 'under threats or conditions that a person of ordinary firmness would have been unable to resist,' or if he reasonably believed that criminal action 'was necessary to avoid a harm more serious than that sought to be prevented by the statute defining the offense.'" However, such a defense may only be presented to a jury where the defendant establishes that there was no "reasonable, legal alternative to violating the law."

United States v. Sahakian, 453 F.3d 905, 908 (7th Cir. 2006) (citing Bailey, 444 U.S. at 410; Tokash, 282 F.3d at 969). If a defendant has *any* reasonable alternative other than violating the law, the defense will fail. Bailey, 444 U.S. at 410. Moreover, it is not enough that a defendant merely feared death or serious bodily injury. United States v. Sawyer, 558 F.3d 705, 711 (7th Cir. 2009). Rather, there must be evidence that the defendant was faced with an actual real threat that was present, immediate, or impending. United States v. Tanner, 941 F.2d 574, 587 (7th Cir. 1991).

As affirmative defenses, necessity or duress involve factual questions that can be resolved only at trial by the finder of fact and therefore do not form a proper basis for a motion to dismiss an indictment. Accordingly, the court shall recommend that Armann's motion to dismiss be denied. Moreover, the court shall deny Armann's request for an evidentiary hearing. The facts Armann seeks to establish at an evidentiary hearing would not affect the court's resolution of his present motion. Whether Armann will be able to present either of these defenses to the finder of fact and the burden that will be placed upon the parties regarding this issue, see Dixon v. United States, 548 U.S. 1 (2006), will be questions for Chief Judge Clevert to resolve at trial or through a pretrial motion in limine.

**III. MOTION FOR ADDITIONAL DISCOVERY**

In a single page motion, Armann seeks "additional discoverable materials obtained by Grand Jury Subpoena," specifically a "'small-ish' stack of bank documents." (Docket No. 42.) The government is following its open file policy in this matter. (Docket No. 26.) Although the defendant is representing himself, he is still bound by this district's Local Rules. The Local Rules prohibit this court from considering any discovery motion when the government is filing its open file policy unless the parties confer in an effort to work out any discovery dispute and movant includes in the motion the date and time of the conference and who participated. Crim. L.R. 16(a)(1) and (b). Having failed to comply with this Rule, the court is barred from granting the defendant the relief he requests.

Moreover, based upon the government's response, it appears that Armann's request is moot. Armann has long-ago received the documents referenced in his motion. (Docket No. 69.) Therefore, Armann's motion, (Docket No. 42), shall be denied.

**IV. MOTION FOR NOTICE OF USE OF RULE 404(b) EVIDENCE**

"Motions" for disclosure under Rule 404(b) are improper. See, e.g., United States v. Mathis, 2010 U.S. Dist. LEXIS 43933 (E.D. Wis. Apr. 14, 2010). Rule 404(b) obligates the government, upon request of the defendant, to provide the defendant with "reasonable notice" of its intent to use such evidence and "the general nature of any such evidence." The rule requires merely a request, not a motion. Thus, the motion shall serve as the defendant's request for notice.

Armann requests that he be provided of notice within 21 days of the docketing of his motion. The government responds that it will provide the defendant with notice in advance of the final pretrial conference. (Docket No. 69.) The government does not indicate how far in advance of the pretrial conference it will disclose this information and because a pretrial conference and jury trial have yet to be scheduled in this matter, it is impossible for this court to have any idea how far in advance of trial the final pretrial conference will occur.

Because the defendant is proceeding pro se and is currently incarcerated, what is "reasonable notice" in an ordinary case might not be reasonable in the present case. The court recognizes that the defendant's ability to adequately prepare his defense in response to any proposed Rule 404(b) evidence is hampered by both of these circumstances. Therefore, the court shall order the government to make any required 404(b) disclosures not later than 45 days before the commencement of trial or 5 days before the final pretrial conference, whichever is earlier.

**IT IS THEREFORE RECOMMENDED** that the defendant's motion to dismiss the indictment, (Docket No. 34), be denied.

**IT IS FURTHER ORDERED** that the defendant's motion for an evidentiary hearing, (Docket No. 35), is **denied**.

**IT IS FURTHER ORDERED** that the defendant's motion to obtain additional discovery, (Docket No. 42), is **denied**.

**IT IS FURTHER ORDERED** that the defendant's motion for notice of the government's intent to use evidence pursuant to Fed. R. Evid. 404(b) is **denied**. The defendant's motion shall serve as the defendant's request under the Rule. The government shall make any required disclosure under Rule 404(b) not later than **45 days** before the commencement of trial or **5 days** before the final pretrial conference, whichever is earlier.

**IT IS FURTHER ORDERED** that the defendant's motion, (Docket No. 70), is **denied** for docketing purposes. It was unnecessary to file this document as a motion.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A), (B) and (C) and Fed. R. Crim. P. 59(a) and (b)(2) whereby written objections to any order or recommendation herein or part thereof may be filed within fourteen days of the date of service of this recommendation and order or prior to the Final Pretrial Conference, whichever is earlier. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal.

Dated at Milwaukee, Wisconsin this 18th day of April, 2011.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge